Good morning, Your Honors. Good morning. May it please the Court, my name is William Um and I represent AKN Holdings, the appellant here in this case, and AKN is formally known as Open Gate, and I will be mindful of the time and would like to reserve a few minutes for rebuttal. All right, counsel. So what this case involves interpretation of long-standing California Supreme Court on insurance law. The California Supreme Court, dating all the way back to Gray v. Zurich in 1966, a seminal decision highlighted the importance and the broad nature of the duty to defend. And in this particular case, and when the insuring agreement is triggered, which is undisputed in this case, i.e. that there was a wrongful act that triggered the insuring agreement, that the only way that the only way that an exclusion, like the exclusion that is being asserted here by Great American, can override that broad duty to defend is if they can show that there is absolutely no potential, that there are allegations in the underlying complaint that would eliminate any potential for coverage. And here there's obviously a number of allegations, but I want to focus on two allegations which Great America asserts and which, in our view, the District Court got wrong when it dismissed my client's complaint. And the two allegations in the underlying, and I'll refer to that as the FINSA action in the underlying action, there are two. One is that on July 7, 2014, one of AKN's employees, Virginia Thornton, provided false financial information to the plaintiff. They also alleged that on July 29, that Jack Roberts, another employee of AKN, provided false details regarding the financial forecasting of what the underlying company would be able to do, basically saying that they're going to be prosperous, they're going to be a great turnaround plan for the company. Well, those two allegations, if you take of them separately, which ended up being the material allegations in the underlying action, occurred six months before any contract even came into fruition. So the question that I think that needs to be asked is, how does pre-contract allegations that happened six months before contract formation can ever arise, be based upon, relate to any breach of contract? Counsel, on my scorecard, you're a little bit in the weeds here. Okay. And so I'm wondering if you could take a step back and address judicial estoppel, whether your client has taken different positions about whether these claims rise out of contract. Sure, and I'm happy to address the judicial estoppel issue. So legally, on judicial estoppel, the have to succeed in a previous action. Right. So AKN, the underlying action, argued that the choice of law and foreign provision in the agreements govern the application of the Mexico laws. And despite what Great America says, AKN lost that argument. The court expressly held and made a because AKN is not a signatory to the action. And even though the court ultimately... Because AKN is not a signatory to the action? I'm sorry, the signatory to the agreements that have the choice of law provision in it. Which was that, the 2021 case or the 2017 case? So it's the same case. Well, but my point is, is that in 2017, AKN successfully persuaded the Federal District Court to dismiss the case on forum non-convenient grounds, on the basis that the claims arose from the three contracts at issue. Not on the matter of fraud, on the contractual provision, and AKN prevailed and was successful. And then your client then did not consent to the jurisdiction of the Mexican court, correct? Sure, Your Honor. And so then having succeeded in that, then it returned to court in 2021. So AKN was successful in that. Actually, AKN was not successful in that endeavor on the choice of law, to be clear about. Well, no, that's right. That's right, but on the choice of law. But the point was, in terms of the... As Judge Christian is saying, to get out of the weeds and look at the big picture. Throughout the litigation, with respect to FINSA, your client took the position that these matters arose out of the three contracts at issue, that it was not a matter of independent, standalone tort actions of fraudulent concealment or fraud, correct? That you insisted that it was within the underlying contractual documents, correct? We're not disputing the litigation positions that AKN took in the underlying action, but we obviously are contending and take issue with the fact that we succeeded on those issues. Well, you ultimately did succeed, did you not? Because as I understand it, with respect to the action of FINSA versus AKN, ultimately, by an order of September 9, 2021, that case was ultimately dismissed. AKN was successful in defending its cause of action brought by FINSA. It was successful because the underlying court applied the governmental interest test. I understand. Expressly rejected the choice of law provision in the agreement as governing, and that's how AKN prevailed, relying upon the two allegations about the pre-contract formation conduct that occurred in July of 2000. Well, let me get to the big picture here, again, as to Judge Christian's question. Sure. Ultimately, ultimately, after prevailing, for whatever reason, in the FINSA litigation, in which your client consistently persisted in arguing that it was within the contractual terms, be it under forum non-convenience or any other theory, that then when it comes time to the matter of the insurance question, as to Great American, then your client essentially, it appears to shift gears and notes that it's based upon the wrongdoing exclusion or the coverage for wrongdoing or fraud of some sort. You're basically, as to American, as to Great American, you're contending that the gravamen of the case is that it's not just a contractual claim, but it's a claim of fraud on the part of your client, which would be within the terms of the Great American policy, correct? Actually, I take issue with the premise of the question, because AKN has always consistently indicated that the fraud allegations here, started in 2017 from the original complaint, went all the way through, and there is no dispute in this case, even by Great America, that the fraud allegations fall within the insuring agreement for wrongful act. Okay. So, and let me be clear about the larger picture about whether AKN's litigation positions, because that's what this is. This is litigation positions. Well, that's right. That's what judicial estoppel is all about. In terms of the principle of judicial estoppel is, is that if a party asserts a position which is inconsistent with an earlier position, and that party was successful in persuading a court to accept that earlier position, and then if that party is attempting to assert an inconsistent position that would derive an unfair advantage, that they're the criteria for judicial estoppel, correct? Sure, Your Honor, but again, I think it's clear from the underlying court's order that the court rejected AKN's argument about the choice of law provision, which is not insignificant for judicial estoppel, which is a pretty aggressive, in our opinion, equitable doctrine. But the, I think the other argument that for larger big picture to address Judge Christen's question is the issue about, did we, AKN, argue in the underlying action that the contracts or the agreements issue relate to the underlying lawsuit? And absolutely, we did. But that cannot be the basis for determining whether there is coverage or not. Why not? Because here's why. No, no, no, no, not about coverage. Can it not be the basis for a judicial estoppel ruling? So in theory, it could be if you prevailed on that precise argument, because the idea of judicial estoppel is that you can't take one position here, one position there, and it would be a harm to the court. But again, we lost. I mean, there's no dispute about that. We lost the argument that the choice of law provision. You lost, I don't mean to interrupt you, but this is important, obviously, because the Supreme Court authority in New Hampshire versus Maine is the leading, one of the leading Supreme Court opinions, and it clearly identifies these three factors, the second of which is absence success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations, and thus poses little threat to judicial integrity. And to that extent, that language aids you in your argument, okay? If your argument is that you're saying you did not have success in a prior proceeding, you're saying that you didn't have success in a prior proceeding with respect to a specific ruling on farm nonconvenience. You ultimately were successful in deflecting any claim of offense. The offense had never recovered from your client. The case was ultimately dismissed, correct? Yes. All right, you won. You totally won that case. Is your position that you didn't win on this issue? Yes. That it would be flipped? I mean, I really need to hear your answer. Yeah, and let me be clear about that if I wasn't. Judicial requires that you don't just win the case, because ultimately, if you end up winning the case... Right, you have to take an inconsistent position on an issue, so... It's got to be the very precise, granular position that you are using. I don't know about granular. Well, it's important here, because the argument here by Great America is that ultimately Mexico law applied. We don't dispute that, and that's how we prevail. But just focus on what positions you took, if you would, because that's my problem on my end. So our position, the AKN did in the underlying action, argued that the choice of law provisions and the agreements that we weren't parties to governed the proceedings, and that's because originally, the complaint was filed against not only my clients, but against the subsidiaries as well, too, for breach of contract and the like. But when this particular court was dealing with our arguments about choice of law and why the choice of law provision in the agreement to apply... What particular court? The underlying... Judge Blumenfeld in the FINSA action. In FINSA, okay. Said defendants, AKN, did not agree to the choice of law clause because they were not signatories to the agreement. Okay. And the court in that case, the FINSA judge, denied our motion for summary judgment. That's what the court did. Now, ultimately, the court, as part of the pretrial proceedings, realized, I really do need to resolve this issue about what law applies, whether it's California or Mexico law, and then applied the governmental interest standard, the test, to ultimately say, you know what? Mexico law applies to this case. The one-year statute of limitation applies, and then ultimately dismiss the action. Because you wouldn't consent. You wouldn't consent to Mexico law or to proceeding your client. Is that right? No, I don't think that's the case. That's why the case was brought back to California in the first place. Because you had not consented. What do I have wrong? I mean... Then you came back, and then it was dismissed pursuant to the one-year statute of limitations when they hit reset. I think what you're doing is you're, I would say, confusing the forum consent with the choice of law issues, which are two separate issues. I fully appreciate it, and I'm trying hard not to take your... Yes. I fully appreciate the distinction. I'm still trying to get at... Because, you know, your time is running out. Yes, I understand that. And I know we're using up all of your time, but I'm still trying to get at your answer to my question about why you shouldn't be traditionally stopped for taking inconsistent positions. I'm all ears. Because, again, it's very specific. We did prevail, but you have to prevail on that argument, the choice of law, the argument that you're advocating that the Mexico law should apply because of the choice of law provision in the agreement. Okay. We lost that issue. All right. If that's the entirety of your answer, you've given me that about three times, so I'm with you. Well, you lose that issue. With all due respect, Hamilton doesn't apply. I don't want to take up much of your time, but if I'm mistaken on this, please correct me. I thought that the opinion of the United States District Court for the Central District of California in FINSA Portfolios v. OpenGate, I thought it clearly reflected that FINSA attempted to then file suit in Mexico, and your client refused to consent to Mexican jurisdiction after having prevailed on the Foreign Nonconvenience Clause. So, ultimately, then, in 2021, with the consent of the court, FINSA was then able to reopen its case by filing an amended complaint in the same federal district court, correct? And, again, that's why we were in the case before Judge Blumenfeld. That's right. Because of the fact that they were allowed to file a first amendment complaint. And then, ultimately, that case was dismissed, and FINSA was never successful against your client. Because the court applied the governmental interest test and not our argument because we lost the motion for summary judgment. FINSA's claim against AKN was the same claim that AKN later launched, correct? I'm sorry. In terms of inducement and fraudulent concealment, your client, the lawsuit that was originally filed against your client eventually resulted in your client's sale to FINSA, and that gave rise to the cause of action FINSA had against your client, correct? No, it did not. Again, there are stand-alone fraudulent inducement allegations that preceded the contract, which are stand-alone allegations that preceded a contract. I'm not getting to the merits of it. I'm really trying to stay in the judicial esophole because the point is that if you assert two totally inconsistent legal positions, the Supreme Court has been very clear in the analysis of it in terms of whether or not a party is allowed to prevail under those circumstances. Yeah, and I do want some time for rebuttal, but it's clear that our position is we did not succeed on that particular issue. I understand. And also, Hamilton is very clear that there's a third prong as well, too, not just the second one, and whether that would do harm to the judicial system to allow the positions to be taken. And I would argue here that in the coverage action, the positions that are taken in the underlying action should not govern whether you have coverage or not, just as if we said, oh, in the underlying action, they're not related to the contract at all, and therefore there should be coverage, and we're citing that reference. So they're not inconsistent positions to begin with. They're not we didn't succeed on it, and it wouldn't do the harm that's required. Thank you. All right, counsel, thank you. You've exceeded your time. We'll give you two minutes for rebuttal. Thank you. Good morning, Your Honors. Paul White of Wilson-Elster on behalf of Great American. I've got a number of notes in front of me, but maybe one of the best places to start, given your questions, is what ACAN has alleged in this appeal. Just on page 2. The crux of FINSA's claim is that ACAN holdings made false representations and omissions as part of a shell entity fraud scheme to induce FINSA to agree to the terms of sellback transaction. FINSA relied on these representations prior to entering into the transaction, and FINSA alleges that had it known that the representations were false, FINSA would not have entered into the transaction. In fact, ACAN, in the underlying case in its dispute with FINSA, repeatedly represented to the court that it was all about the contract. Their sole defense in going forward was that it arose from, related to, and was based on breaches of the contracts, the purchase agreement, the lease agreement, and the guarantee agreement, all three. Yes. So they made those representations. The point that Your Honors have honed in on is an important one, because the distinction between seeking a form of nonconvenience because of Mexico versus a governmental interest test is a distinction without a difference here, because what they were still trying to get the court to do, and did so successfully, was say we're going to apply Mexican law to a statute of limitations to what? To the contracts. And so the factors that play into judicial estoppel are a bright light on the radar screen here, because they are representing to a court that it is all about the purchase agreement. The claim arose from the contract, so the one-year statute applied. You got it. So they were successful in an underlying action in gaining summary judgment based on contract law under Mexican law. So they preferred that. They preferred having not consented to jurisdiction in the Mexican court and then coming back to the American federal court. Yes. But still applying the one-year period of limitations. Right. Right. So another point, just to highlight something that I think matters, is that Judge Blumenfeld was the judge in the underlying case and then became the judge in the coverage case. And if you'll note in footnote 5 of his opinion, he went on to say you're relying on the same information. It is related to the contract. And that's why I start off reading page 2 from their opening brief, because this all does come back to contract. And so they relied on that to obtain this positive relief. To your point, to our point in the brief, that's why judicial estoppel applies. Your point being that, again, the language at least I hone in on is the Supreme Court in New Hampshire versus Maine is the case that's cited very often in terms of outlining these. And it isn't just a matter of – it's key that it's a matter of success in the prior proceeding, that if there's not success in the prior proceeding, then there's no risk of inconsistent court determinations. And your point is there was, in fact, success in the prior proceeding. Ultimately, the claim of Finza was totally disallowed. There was absolutely success. Counsel, that's not enough. You can't just win. I mean, opposing counsel, isn't he exactly right? It has to be success on the issue, on the same issue. This wouldn't work if he prevailed on a completely different issue, would it? Whether it – I guess it depends on how you couch what is the issue. And to the point – You're stretching it. To be clear, I think that this is a bit of a stretch of judicial estoppel because what you're arguing is that the prevailing was the one-year statute of limitations, and that's all premised upon the claims arising out of contract, right? But the foundation of the basis for dispositive relief is that they have a contract that you're going to apply a one-year statute of limitations based upon Mexican law. And whether that is applied as a matter of a choice of law provision or a governmental interest provision, that's why I say that's a distinction without a difference because they are saying our right still arises because this is a contract. But for the contractual relationship, you don't have a Finza cause of action. All you have is two parties pointing fingers at each other. But there is no claim but for the contract. My point is only that I think you were making a really broad – biting off a whole lot more than what I think is necessary to resolve this case. But you seem to be continuing to embrace it or continuing to chew on it, whatever the mixed metaphor is. But it wouldn't be sufficient for you to show that they won on any theory, would it? I'm not trying to get the court to expand a judicial estoppel doctrine. What I'm suggesting to the court is that judicial estoppel, as it is presented in a variety of cases cited in the briefs, stands for the position that you can't present this inconsistent position, rely upon it, present it to a court, and get dispositive relief, and then turn around and say to your insurance company, well, we didn't really mean that contractual law should apply here. But the point is there has to be success in the prior proceeding as well on those assertions. Correct. The Supreme Court has clearly held that there's not success in those, that the language specifically is that a later inconsistent position doesn't pose a threat to judicial integrity if it just happens to be inconsistent and they didn't prevail earlier. But if you're successful in the prior position, then judicial estoppel applies. Right. It has to be an inconsistent position. So your position, I think, your argument here is that this went to the very nature of the claim. Does it arise out of contract or not? That's correct. And picking up on Judge Christian's question, I don't mean to take up too much of your time. It seems to be very simple. As complex as this matter is, I guess being a district court judge, you have to distill things down. That's what I generally do in my day job. But the simple fact of the matter is, is that if this is a contractual claim, if this is a contractual claim, there's no coverage by your client. But in terms of the policy, to the extent that it's based on stand-alone tort claims for fraudulent inducement, misrepresentation, your client has to provide coverage to the insured, correct? Well, let me just say on that note, there were various reservations in place. I understand. And there's a lot of law on fraud and intentional conduct. Staying out of the weeds, my point is, is that it benefited AKN to put this in a contractual context with respect to forum nonconvenience, referral to the Mexican court, then declining to consent, as clearly stated in the record, to Mexican jurisdiction, being back in federal court, and it being in a contractual context. To the extent that it's in a stand-alone tort concept, that was never the strategy on which they prevailed, but it's now the basis of their attack and claim against the insurance company, in a nutshell. You said it very articulately. The point is, it was claimed to be a contractual claim. All along, it was a contractual claim. When it was all finished and clearly opposing counsel was acknowledged, make no mistake about it, AKN prevailed. In terms of allegations of fraud or whatever on FINSA, FINSA never recovered against AKN. But now AKN seeks coverage or for cost now on a tort theory and not a contractual theory. In a nutshell, that's what this case is about. It is trying to assert that somehow, somewhere, there's a tort theory, and there's not. Well, there may or may not be, but the point is, is that under the concept of judicial estoppel, that's really what Judge Kristen and I are focusing on in terms of the doctrine of judicial estoppel. Right. Yeah. Okay. So then, and I don't see a clock on my time. Six minutes. Six minutes. Okay. It should be right under you. Well, how dare you put it right? I'm looking as my grandma was saying. Thank you. I thought this was the clock. That's all right. That's all right. Going to your point, just to talk about the exclusion there. The exclusion is very broad. The exclusion precludes coverage in any instance in which the theory of recovery is based on, arising from, or related to in any way an actual or an alleged contract. We have bookends provided to us by the California Court of Appeal in the Medill decision and the Ninth Circuit Court of Appeals with Office Depot. They have repeatedly said this is a broadly worded exclusion, and so if there is even incidental relationship to a contract, we will apply it to preclude coverage. Those two cases of Medill and Office Depot support that this matter arose from, is related to and based on the contract, the purchase agreement, the leaseback agreement, and the guarantee of the leaseback agreement. The point of their very brief is to say that the conducted issue, whether it occurred before those contracts were executed or not, is what induced FINSA to enter into the contract, and it is alleged to have been part of a greater scheme whereby AKN, through its subsidiaries, would then induce the contract, fell to pay the monthly rent, fell to pay on the guarantee, and leave FINSA without a recovery. And ultimately, they succeeded in obtaining summary judgment pursuant to the one-year statute of limitations under Mexican law. And so it all fits together. They could not assert the forum nonconvenience clause because the court ruled that they had forfeited reliance on that because after having prevailed and going to Mexico, then they refused to consent to Mexican jurisdiction. That's right. That's clearly in the record. That's right. It's clearly in the record. There are so many things that are clearly in the record that unfortunately we needed to provide with the supplemental excerpts of record because AKN simply wasn't putting that information in front of the court. That's why it was important that Judge Blumenfeld was one of the first ones to say, hey, I was the judge in that underlying action, guys, and that's why he puts in something like a footnote 5 because he knows that the allegations and that the defense of AKN was based upon relying upon the three contracts, purchase agreement, lease agreement, and the guarantee agreement. And so this is a case, Your Honors, I would submit, is really on all fours with what the California Court of Appeal in the Ninth Circuit has done with respect to prior decisions in Medell and Office Depot. And I would ask that the court affirm the district court. I'm happy to take any further questions if you have them. It appears there are none. Thank you, counsel. Thank you for your time. Two minutes for rebuttal. I really do think it's important to answer the judicial estoppel issue. Hamilton is very clear that it is not about winning the case. It's about winning the parties' earlier position, and that is critical here. I think that's exactly right. And so I think we've honed in on that. My problem is that I think you asserted when it was time to argue statute of limitations that the one year applied because it claims a rise from contract, and then that changed. Am I wrong about that? That's my problem, and I want to get out of the way and let you answer it. But I do agree with you it's not just a matter of winning the litigation. Sure. I'm sorry. Well, but it seems to me that your client asserted that the one year statute of limitations period applied because the claims arise from contract. Yes, that is the position that we took. But, again, the court rejected that argument. Okay, the court in its order, and I have the specific citation to it. Thank you. Okay. It is Exhibit 2 of our request for judicial notice. If you look at it, it is the July 16, 2021 order. On page 6 specifically states that the fact that defendants are not signatories, defendants being AKN, provides an independent basis for rejecting their reliance on the choice of law clause in the agreements. So there's an express finding ruling against us. And the other thing that's really important to keep in mind is in 2017, the original complaint, there were multiple parties defendants to the case, including the actual defendants who were signatories to the agreement, Hamilton Scientific and a number of other parties. So at that time when the argument about foreign nonconvenience was raised, you had these actual parties who were parties to the action. And if you notice, when the First Amendment complaint was filed, the only remaining party was us, AKN Holdings. And we made the argument that despite all these people being gone, we think that the breach of contract claims that were against these other parties still prevail in this situation. And the court squarely rejected that argument when it ruled against our earlier position, which is what's here. And I would submit that if this court makes a ruling about judicial estoppel and denies coverage, this would be the first court to indicate that how a policyholder defends its underlying action, the strategies and defense strategies that were taken. Because I don't think anyone on this panel would say that it was wrong for AKN to argue as best as possible for a Mexico statute of limitations because there existed a choice of law. That was the strategy that was taken. But this would be the first court to say because you took that position, you no longer have insurance coverage. And that would be fundamentally inconsistent with not only Hamilton but just all that. That's interesting. Let me interrupt you on that. That's very interesting. Having done some insurance defense work in private practice with a large law firm, that's a very interesting posture because to the extent that your client is sued and it can trigger some insurance coverage, any experienced litigator, and obviously, sir, you're very experienced, knows full well that you put your insurance company on firm notice in terms of the basis of all the causes of action. And the insurance companies may or may not then issue what is known as a reservation of rights, correct? In terms of we reserve rights if you're found culpable on one front but not another. That's obviously well known under insurance law. So to posture the proposition that if we find there's judicial estoppel, this is some earth-shaking news, with all due respect, it's really a little bit stretched because everyone knows in commercial litigation that you notify your insurance carrier and if there's some stand-alone tort claims that clearly come within the ambit of fraudulent inducement or fraud and there are other claims that are breach of contract claims, you clearly put the insurance carrier on notice that we may or may not have coverage under a contract claim because of an exclusion but we're also alleged to have committed fraud and had fraudulent inducement and you notify your insurance carrier of that and the insurance company then in some way either provides counsel or becomes involved in some way either under reservation of rights or not. And to be clear here... Am I not correct about how I just summarized how that works? Yes, but we absolutely did notify the insurance carrier about the fraudulent inducement claims and one important point, Great America does not dispute the fact that the fraud allegation falls within the insuring agreement. Well, there's no question about that. I understand that. So the idea that we somehow switched our claim from a contract claim to a tort claim, that is just a false premise and that in the underlying action and how we defended it, defending the tort claims that were brought against my client, was to point to the contract to take its best defense strategy to say that the choice of law provisions would apply and again on that position we lost. And so to then say that you lost on that but you took that position and ultimately prevailed in the underlying action, I don't mean to take too much of your time. You're entitled. I'm just trying to see. You obviously have a problem with me on this panel. I'm trying to explain so you have an opportunity to answer me. Ultimately, your client on a contractual theory doing battle in the field of contractual law, your client ultimately prevailed. You didn't win on a tort theory. Your client ultimately prevailed on contractual theory, statute of limitations, Mexican law, whatever. Your client prevailed under a contractual theory on this case. Again, I would have to disagree with you that my client lost. Did FINSA ever collect any money from your client or not? No, because they applied the governmental interest test. But again, to be clear about this, know that there were other defendants in the case when the form non-convenience issue was arrived. I'm just responding to your thinking we're making earth-shaking law here if we find there's judicial estoppel. With all due respect, I don't think that's the case. Of course, I'm not a California judge, but I'm just telling you, there's nothing earth-shaking about judicial estoppel in terms of the context of theories and in terms of insurance coverage, reservation of rights, and points well taken. But, Counselor, your view is it would be earth-shattering if we said it's not on the issue that you prevailed on. That's the point. The position, and on top of it, is that what it would do from a public policy standpoint, it would limit how insureds or policyholders would go about arguing their underlying action knowing that even if they lost the issue, that that could somehow impact your insurance coverage. Because I completely agree with, I think, everyone on this panel, that if we had prevailed on that issue, that position, we'd be having a very, very different conversation. You're way over time, and Judge Wallinson, I can feel her getting ready to tell you that. It's emanating, it's vibrating. But I must have written down incorrectly your record site right when you came to the podium and I said, tell me, where in the record? And you said exhibit 2. Could you just give it to me again? I want to make sure. That's not where I was looking. So it's exhibit 2 to our request for judicial notice. Okay. Hold on. Okay. And this would be Judge Blumenfeld's choice of law order, which is on page 6. You don't have a record site, do you? Well, it's actually page 22. The PDF site would be 22. It's because it was a request for judicial notice. Yeah, request for judicial notice. Right, right, right. It's not in our, okay. But it's page 22 of the request for judicial notice, which is the docket entry, and then it is footnote 2 was what I cited, but there are multiple references throughout this document about the particular issue. And then just, I know we didn't get on the substantive issue, but please keep in mind that the allegations and the California Supreme Court's broad duty to defend talks about potentiality, and these are talking about allegations that occurred well before any contract formation. We understand that. And the one final point I would say is that the exclusion here is a breach of contract exclusion, not a contract exclusion, which is significantly different than that was at issue in Office Depot. All right. Thank you. If I can, Judge Rawlinson, if I can just one second. Mr. Ulman, thank you very much, and I apologize if I was too aggressive in my questions. The lawyers on the East Coast will tell you that I'm known to have a hot bench, and I have a hot bench. As Justice Sotomayor says, I have a hot bench because I like to have, I want you to know what I'm thinking. You're entitled to advocacy. You need to know what we're thinking, and I wanted to give you an opportunity to know what I was thinking. Absolutely, and just as well, I hope you appreciate that. I do, I do. No offense at the nature of my comment. I actually enjoyed it, but I wanted you to have the benefit of what I was thinking to respond to me, so thank you very much. It's all in the interest of getting to the hub of the case and making the best decision we can. Yeah, no, we thank you for participating and appreciate your participation. All right, thank you. Thank you to both counsel. The case just argued is submitted for decision by the court.
judges: RAWLINSON, CHRISTEN, Bennett